IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**ANTHONY WRIGHT,**

      **Petitioner,**

**v.**                                      **Civil Action No.: 3:23-CV-153
(GROH)**

**DESIGNATION AND SENTENCE
COMPUTATION CENTER, and
WARDEN MR. LOVETT,**

      **Respondents.**

## <u>REPORT AND RECOMMENDATION</u>

## I. INTRODUCTION

On June 6, 2023, the Petitioner Anthony Wright, an inmate incarcerated at Hazelton USP, acting *pro* se, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241, claiming that he is being improperly held in continued confinement in the Special Housing Unit ("SHU") at Hazelton. ECF No. 1.[1] The Petitioner paid the filing fee on August 1, 2023. ECF No. 15. The Petitioner filed an amended petition on October 26, 2023. ECF No. 57.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be dismissed without prejudice.

---

[1] All ECF numbers cited herein are from the instant case, 3:23-CV-153, unless otherwise noted.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Conviction and Sentence[2]

On April 16, 2001, an indictment was returned in the District of Nebraska, case number 4:01-CR-3040, charging the Petitioner with kidnapping. ECF No. 1. On May 22, 2002, a second superseding indictment was returned, which charged the Petitioner with kidnapping and use of a firearm during a crime of violence. ECF No. 57. Following a two-week trial, on June 19, 2002, a jury convicted the Petitioner of both counts of the second superseding indictment. ECF No. 97. The jury heard evidence that on April 8, 2001, the Petitioner used a gun to force a 17-year-old girl ("the victim") into his vehicle in Kearney, Nebraska. U.S. v. Wright, 340 F.3d 724, 727 (8th 2003). When the victim attempted to escape, he beat her until she became unconscious. Id. The Petitioner drove the victim through South Dakota to Montana where he raped her. Id. at 728. Throughout the multi-day kidnapping the Petitioner raped the victim at least four times. Id. at 728–29.

During the kidnapping of the victim, the Petitioner also rolled his car into a ditch, stole a pickup truck, and stole a front-end loader to retrieve his car. Further, while attempting to remove duct tape from the victim's wrists, he cut and burned the victim, and threatened her life. Id. at 728. Additionally, the Petitioner broke into numerous private homes and cabins, stole another vehicle in Montana, engaged in a standoff with police, and finally surrendered on April 12, 2001. Id. at 728–29. In addition to the testimony of

---

[2] The facts are taken from Petitioner's criminal conviction in the District of Nebraska, in case number 4:01-CR-3040, available on PACER. Unless otherwise noted, the ECF entries in sections II.A., II.B., and II.C. refer to that criminal case. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record"); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'"). Because of the age of the records, many are not available on PACER. Beyond the information contained in the docket, facts of the Petitioner's conviction, sentence, and appeal are taken from the opinion of the Eighth Circuit in U.S. v. Wright, 340 F.3d 724 (8th 2003).

2

the victim, the jury was presented with DNA evidence of vaginal swabs taken from the victim which indicated that the Petitioner was the male contributor. Id. at 730.

The Petitioner was sentenced on September 16, 2002, to a term of life imprisonment for kidnapping, and to seven years for the use of a firearm during a crime of violence, with those sentences to be served consecutively to one another. ECF Nos. 124, 127. The Petitioner's sentence was imposed under the section § 4B1.2(a) career offender enhancement of the Sentencing Guidelines because he had "at least two prior felony convictions for crimes of violence." U.S. v. Wright, 340 F.3d 724, 735 (8th 2003).

### B.     Direct Appeal

On September 24, 2002, the Petitioner filed a notice of appeal. ECF No. 128. On August 26, 2003, the Court of Appeals for the Eighth Circuit, in that court's docket number 02-3445, affirmed the Petitioner's conviction and sentence. ECF Nos. 152, 153, 160. See U.S. v. Wright, 340 F.3d 724 (8th 2003).

### C.     Motions to Vacate Pursuant to 28 U.S.C. § 2255

On July 10, 2003, the Petitioner filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. ECF No. 146. That case was also assigned civil action number 4:03-CV-3266. Id. On September 9, 2003, the district court dismissed with prejudice the motion to vacate. ECF No. 156.

The Petitioner has repeatedly sought permission to file second or successive motions to vacate, but repeatedly has been denied relief.[3] ECF Nos. 176, 182, 183, 190,

---

[3] Those attempts include the following docket numbers in the Eighth Circuit: (1) 04-1169, filed on January 22, 2004, and denied on February 11, 2004; (2) 04-1897, filed on April 16, 2004, and denied on May 28, 2004; (3) 06-1523, filed on February 16, 2006, and denied on August 24, 2006; (4) 16-3963, filed on October 19, 2016, and denied on June 13, 2017. In the district court, the Petitioner also filed a second motion to vacate in 4:04-CV-3354, filed on November 12, 2004, and dismissed on December 6, 2004. ECF Nos. 190, 197. On May 13, 2024, the Petitioner filed a motion for a certificate of appealability, which was denied by the district court on May 13, 2024. ECF Nos. 379, 380.

197, 260, 261, 303, 304.

### D. Instant Proceedings Under 28 U.S.C. § 2241

#### 1. Claims in the Amended Petition

The Petitioner's amended petition asserts a sole claim, that he "has been illegally, unlawfully, unconstitutionally held in 'indefinite SHU detention.'" ECF No. 57 at 5. The Petitioner contends that he was placed "in SHU without basis, cause, justification, or merit, and without ever reviewing his security status," and denied the protections of due process and equal protection. Id. at 6.

He asserts that he has exhausted his administrative remedies through the Central Office as to this claim. Id. at 7–9. However, he simultaneously contends that he "has had trouble trying to exhaust remedies, Respondents[4] either [lose] them, refuse to file them, or transfer him too quickly." Id. at 7. Specifically, the Petitioner contends that he exhausted through the Central Office remedy ID numbers 329235-A1, 329452-A1, 327138-A1, 406037-A1, 498207-A1[5], thus granting the court jurisdiction to hear his current claim. Id. at 8–9. Related to his single claim for relief, the Petitioner asserts that "no due process hearing has ever been conducted" for his Special Housing Unit placement. Id. at 10.

The Petitioner contends that he "suffers legal injury to his actual release by denied

---

[4] The Petitioner has named two respondents in this action: (1) the Designation and Sentence Computation Center of the Bureau of Prisons; and (2) the warden of the facility where he is incarcerated. However, pursuant to both statute and Supreme Court precedent, "the proper respondent to a habeas petition is 'the person who has custody over the petitioner.'" Rumsfeld v. Padilla, 542 U.S. 426, 434, 124 S. Ct. 2711, 2717, 159 L. Ed. 2d 513 (2004) (quoting 28 U.S.C. § 2242). The undersigned uses the plural pronoun where necessary to summarize the Petitioner's claims, but the singular pronoun where necessary to reflect the warden's arguments, and in the analysis.

[5] Pursuant to the Petitioner's amended complaint this administrative remedy sought a "protection transfer from gangs to get him out of SHU." ECF No. 57 at 8.

legal access," and that he is injured by his inability to hold an institutional job and pay restitution. Further, he claims injury due to the deterioration of his mental and physical health including anxiety, depression, panic attacks, dementia/memory loss, and altered states of consciousness, and "physical health destruction" from lack of physical activity, and loss of capacity to enjoy life.[6] Id. at 11.

As relief, the Petitioner asks the Court to "grant[ ] his liberty from indefinite detention within 500 miles from his home in Wisconsin at a non-active gang facility," that his property be returned, that he be granted a Due Process hearing, and a permanent injunction against the BOP to prohibit the Petitioner being held "at an active gang facility," and any other relief the Court deems equitable. Id. at 14.

### 2.    Motion to Dismiss, or in the Alternative, for Summary Judgment

The Respondent filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, a memorandum in support thereof on November 8, 2023, and fifty pages of exhibits. ECF Nos. 65, 66, 66-1. In the memorandum, the Respondent argues that the Petitioner failed to exhaust his administrative remedies prior to filing the instant

---

[6] To the extent that the Petitioner contends that he suffered a physical injury through some violation of his Constitutional rights, his argument fails because neither the fact nor the length of his confinement are contested. Accordingly, any attempt to seek relief that does not affect the fact or duration of his confinement is inappropriate for consideration under § 2241. In Hill v. McDonough, 547 U.S. 573, 579 (2006), the Supreme Court held there are "two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus . . . and a complaint under . . . 42 U.S.C. § 1983." Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983.

Actions filed under § 1983 are civil rights actions against state actors.  In Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 399 (1971), the Supreme Court created a counterpart to §1983 so that individuals may bring suit against a federal actor for violating a right guaranteed by the Constitution or federal law. To pursue any claims related to the injuries alleged by the Petitioner, it appears more appropriate that he file a civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), if he seeks monetary damages from a federal actor. However, such action would first require the Petitioner to exhaust all available administrative remedies.

action. ECF No. 66 at 5. The Respondent contends that the Petitioner has filed sixty administrative remedies while in custody. Id. at 8. However, the Respondent asserts that the Petitioner has only attempted to file two remedies related to his SHU placement at Hazelton: (1) remedy ID 1154890-R1, which was filed on March 13, 2023, with the North Central Regional Office ("NCR"), and rejected because it should have been filed in the Petitioner's current region, the Mid-Atlantic Regional Office [Id.]; and (2) remedy ID 1154890-R2, which was filed on March 27, 2023, was again rejected because the Petitioner again failed to file in the Mid-Atlantic Regional office, and instead filed in the Northeast Regional Office ("NER"). Id.

The Respondent further contends that the Petitioner's challenge to his custodial classification is not a cognizable claim under § 2241. Id. at 9. According to the Respondent, a § 2241 petition is appropriate to contest the fact or duration of a prisoner's confinement, but generally not the conditions of confinement. Id.

The Respondent's exhibits are: (1) the Declaration of Misty Shaw, a paralegal with the Mid-Atlantic Regional Office of the Bureau of Prisons, dated November 6, 2023 [ECF No. 66-1 at 1 – 3]; (2) a "Public Information Inmate Data" sheet dated August 7, 2023, for the Petitioner [Id. at 5–9]; (3) "Administrative Remedy Generalized Retrieval" sheet dated October 30, 2023, for the Petitioner which lists 60 remedy submissions [Id. at 11–41]; and (4) "Inmate History Quarters" for the Petitioner, dated August 9, 2023 [Id. at 43–50].

### 3.   The Petitioner's Responses

On November 28, 2023, the Petitioner filed a response to the Motion to Dismiss, styled, "Rebuttal and Objection To: Fraudulent Documents 65; 66; and 66-1 on their Face

in their Entirety 'Re: Dkt 67 Notice,'" ("Rebuttal and Objection") with an exhibit. ECF Nos.

85, 85-1. In his Rebuttal and Objection the Petitioner asserts that: (1) the Respondent's

Motion to Dismiss [ECF No. 65], Memorandum in Support [ECF No. 66], and exhibits

[ECF No. 66-1] "are in contempt of court" [ECF No. 85 at 1]; (2) the parties he has named

as Respondents "have no standing in law to file [those] documents . . . because there is

no 'real party of interest'" [Id.]; (3) the named Respondents are "fictitious," and in

contempt of court [Id. at 2]; (4) "an affirmative defense," although he is not a defendant

in this action [Id. at 3]; (5) the Government is a corporation, an artificial person, an

abstraction, and therefore, cannot "concern itself with anything other than corporate,

artificial person, and the contracts between them"[7] [Id. at 3–5, 19]; (6) he has presented

"prima facie evidence" to support his claims through documents [ECF No. 39-1] which

he previously submitted to this court from a case pending in Iowa State court [ECF No.

85 at 6]; (7) he has exhausted his administrative remedies relevant to the current habeas

petition through filing grievances starting in 2003, and "has raised all issues presented

in the administrative [remedy] process as required" [Id. at 6 – 7, 14, 18]; (8) while he was

incarcerated at USP Tucson he was placed in the general population, and that placement

---

[7] The Petitioner's arguments appear to echo the theory of sovereign citizenship. The Fourth Circuit has recognized that:

> Adherents to sovereign citizen theory believe in a vast governmental conspiracy "governed by complex, arcane rules," according to which sovereign citizens are "exempt from many laws, including the obligation to pay taxes, and ... can be empowered to seize private property, enforce legal actions against individuals, and claim money from the government." J.M. Berger, *Without Prejudice: What Sovereign Citizens Believe*, George Washington University Program on Extremism 2 (June 2016), *https://extremism.gwu.edu/sites/extremism.gwu.edu/files/downloads/JMB%20Sovereign%20Citizens.pdf*.

United States v. Glover, 715 F. App'x 253, 256, n.2 (4th Cir. 2017)

"foreclosed Respondents' claiming Petitioner a threat and denying him access to any grievance procedure to challenge his transfer back out of general population" [Id. at 8]; (9) he was not given a Due Process hearing before his return to Special Housing Unit [Id. at 8–9]; (10) his placement in the SHU has denied him access to the Code of Federal Regulations and the Rules Governing Habeas Corpus under § 2241, has "made futile his grievance attempts," and he "has been denied adequate remedies" [Id. at 9]; (11) that he has a serious medical condition, chronic tuberculosis, and is "terrified to get a respiratory illness or COVID-19" [Id. at 10]; (12) Respondents' acts or omissions exceed statutory authority and violate his Due Process rights [Id. at 11]; (13) the Respondent's argument that the Petitioner's claim is not cognizable is "patently frivolous" and "meant to harass" and "delay, hinder, and obstruct justice" [Id. at 12]; (14) the Petitioner "has sufficiently alleged that his transfer from lower security general population at USP Tucson back to the BOP's maximum security . . . indefinite SHU detention violated his protected and secured right to Due Process" [Id.]; (15) he is entitled to relief under the Supreme Court's holding in Wilkinson v. Austin, 545 U.S. 209, 223 (2005), a § 1983 action, where the Court found that an Ohio prisoner had a liberty interest in avoiding restrictive conditions of indefinite confinement in a state penitentiary [Id. at 13]; (16) BOP staff are corrupt [Id. at 15]; (17) the Petitioner is always under threat from fellow inmates and specifically his SHU cellmate, which "is the biggest cause of not being able to properly file grievances" because his cellmate "has to read your outgoing mail, grievances, legal documents, [and] incoming mail" [Id.]; (18) while in Iowa State prison for Lee County Case Number 08562PCLA007018, the Petitioner shared information with authorities which prevented a bomb threat or detonation [Id. at 16]; (19) the Declaration

of Misty Shaw is "BARRED" based on Ms. Shaw's "perjury and fraud," "false misrepresentations to the court"  [Id. at 18–19]; (20) the Petitioner's medical conditions prohibit him from placement in the Special Housing Unit or Administrative Maximum Security (Supermax) [Id. at 20]; and (21) the Petitioner's claim is not a "conditions of confinement" challenge, but instead a "quantum change challenge" [Id. at 21].

The exhibit attached to the Rebuttal and Objection is a "Reply to Government's Position" which was filed in the United States District Court for the District of Nebraska, case number 4:01-CR-3040, related to the Petitioner's request for a First Step Act sentence reduction and/or compassionate release, with a certificate of service dated September 7, 2022. ECF No. 85-1.

On December 19, 2023, the Petitioner filed another pleading styled "Objections to Respondents' (Documents 66 and 66-1) Fraudulent Misrepresentations Violating Fed.R.Civ.P. Rules 9(b) and 60(b)." ECF No. 90. Therein he contends that: (1) the Declaration of Misty Shaw submitted as an exhibit [ECF No. 66-1] by the Respondent makes "fraudulent misrepresentation[s] of material facts" with intent to defraud the Court and the Petitioner, and contains "perjured testimony" [ECF No. 90 at 1–3]; (2) while in Iowa State custody the Petitioner "stopped a bomb" threat by telling authorities what he knew of a fellow inmate's plot and activities in furtherance of that plot [Id. at 2]; (3) BOP officers are corrupt and "all officers are involved in selling fentenol [sic], K2, cell phones and sexual favors" instead of filing grievances [Id. at 3]; (4) the Court does have subject matter jurisdiction [Id. at 4]; (5) that the Petitioner "did state a cognizable 2241 claim" and is entitled to relief [Id.]; and (6) the "Petitioner's grievances were exhausted in Iowa" and the Respondents "failed to deny this undisputed material fact" [Id.].

### 4.    The Respondent's Reply

The Respondent did not file a reply.

### 5.    The Petitioner's Motions for Injunctive Relief

On November 20, 2023, the Petitioner filed a "Motion for Leave Pursuant to LR PL P 7 to File an Emergency Request for an Injunction." ECF No. 75. Therein, the Petitioner contends that he is in imminent danger, but does not provide any further context for or information about the alleged danger. Id.

Attached to his motion is a proposed "Emergency Request for an Injunction Against Respondents Pursuant to 28 USC [sic] 2208, Fed.R.Civ.P Rule 65 and LR PL P 7." ECF No. 75-1. Therein, the Petitioner contends that the Respondents are "about to transfer Petitioner to an 'active gang USP" with malice, wanton [sic], and intent to have him again [be] brutally stabbed or sexually abused, or murdered and failing to protect Petitioner out of retaliation and discrimination, hate." Id. at 1. Further, the Petitioner asserts that the Respondents continually breach their duty to use due care with his housing needs, and the BOP Designation and Sentence Computation Center ("DSCC") was negligent when it designated the Petitioner to an active gang prison. Id. The Petitioner alleges that he has "already been stabbed 15 times among many other kinds of assaults and cannot be near gangs." Id. at 2. Further, the Petitioner asserts that his crime of conviction has been the subject of ABC's Dateline, and a movie, and that the national publicity surrounding him has made him a target by other inmates. Id. According to the Petitioner, BOP employees and the DSCC have breached their duty to provide him with safe and suitable quarters. Id. at 3. The Petitioner contends his rights are being violated as a direct and proximate result of misconduct by the BOP and DSCC. Id. at 4.

Further, the Petitioner asserts that the Respondents are committing "physical abuse and psychological warfare" against him. Id. at 5.

On April 17, 2024, the Petitioner filed a "Motion for an Emergency Injunction Fed.R.Civ.P. Rule 65." ECF No. 104. The Petitioner asserts that his "liberty is literally under immediate and future threat . . . due to Respondents [sic] attempting to place him in Supermax ADX under a fraudulent incident report on 6/20/22." The Petitioner asserts that he is actually innocent of the incident report, and seeks an order directing that a Due Process hearing be held. Id.

### III.    STANDARD OF REVIEW

#### A.    Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

#### B.    Pro Se Litigants.

Courts must read *pro* se allegations in a liberal fashion and hold those *pro* se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief

against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute, 42 U.S.C. § 1997e, Pub.L. 113-4, Title XI, § 1101(a). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[8] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C.      Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

A petition filed pursuant to § 2241 is the appropriate method for a prisoner to challenge the fact and length of his confinement, but generally not the conditions of that confinement. Preiser v. Rodriguez, 411 U.S. 475, 498–499 (1973). "[I]mmediate release or speedier release from [ ] confinement [is] the heart of habeas corpus." Id. at 498.

### D.      Exhaustion of Administrative Remedies

The Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq.,[9]

---

[8] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

[9] See https://www.bop.gov/policy/progstat/1330_018.pdf.

addresses the Bureau's Administrative Remedy Program, and directs inmates on the processes necessary to exhaust their administrative remedies by filing four mandatory[10] remedies: (1) an informal resolution (BP-8)[11]; (2) an administrative remedy at the facility (BP-9); (3) an appeal to the regional office (BP-10); and (4) a final appeal to the central office (BP-11). Failure to complete all four mandatory remedies is fatal to a claim based on the inmate's failure to exhaust administrative remedies.

The Fourth Circuit recognizes the process that inmates must follow to exhaust administrative remedies:

> The BOP grievance process is set forth at 28 C.F.R. § 542.13–.15 (2009). First, an inmate normally must present his complaint informally to prison staff using a BP–8 form. If the informal complaint does not resolve the dispute, the inmate may make an "Administrative Remedy Request" to the prison Warden using a BP–9 form. The BP–8 and BP–9 forms are linked. Both forms involve a complaint arising out of the same incident and both must be submitted within twenty calendar days of the date of that incident. 28 C.F.R. § 542.14(a). If the Warden renders an adverse decision on the BP–9, the inmate may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response, using a BP–10 form. 28 C.F.R. § 542.15(a). The inmate may appeal an adverse decision by the Regional Director to the Central Office of the BOP using a BP–11 form. *Id.*

---

[10] Inmates who are incarcerated in Community Corrections Centers (CCCs) are not required to attempt informal resolution. BOP PS 1330.18 § 542.13.b.

[11] Many BOP institutional handbooks refer to the Informal Resolution Form as the BP-8 form. See:

1. FCI Waseca https://www.bop.gov/locations/institutions/was/was_ao_handbook_eng_031517.pdf;
2. FCI Oxford https://www.bop.gov/locations/institutions/oxf/OXF_aohandbook.pdf;
3. FPC Schuylkill https://www.bop.gov/locations/institutions/sch/SCH_camp_aohandbook.pdf;
4. USMC Springfield https://www.bop.gov/locations/institutions/spg/spg_ao_handbook050917.pdf;
5. USP Lewisburg https://www.bop.gov/locations/institutions/lew/LEW_smu_aohandbook.pdf;
6. FDC Tallahassee https://www.bop.gov/locations/institutions/tal/TAL_fdc_aohandbook.pdf;
7. FCI Fort Dix https://www.bop.gov/locations/institutions/ftd/FTD_aohandbook.pdf; and
8. USP/SCP McCreary https://www.bop.gov/locations/institutions/mcr/MCR_aohandbook.pdf.

Hill v. Haynes, 380 F. App'x 268, 269, n.1 (4th Cir. 2010).

    **E.**    **Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than

conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id.</u> at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  <u>Id.</u> at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan  Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (1990)).  In considering a motion  to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff.  <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

### F.    Motions for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for

summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v.

Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

### G.   Requests for Injunctive Relief

The Fourth Circuit reviews "a district court's decision to grant a preliminary injunction under an abuse-of-discretion standard." International Refugee Assistance Project v. Trump, 883 F.3d 233, 255 – 56 (4th Cir. 2018), as amended (Feb. 28, 2018). The standard for granting injunctive relief was articulated by the United States Supreme Court which held in Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) that:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

As restated by the Fourth Circuit, when a plaintiff seeks the extraordinary remedy of a

17

preliminary injunction:

> The plaintiff "need not establish a certainty of success, but must make a clear showing that he is likely to succeed at trial." A plaintiff seeking a preliminary injunction must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest.

Int'l Refugee, 883 F.3d at 256 (citing WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009) (citing Winter, 555 U.S. at 7)). This standard becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo. See East Tennessee Natural Gas Co. v. Sage, 361 Fed 3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that "mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief").

In regard to requests for permanent injunctive relief, the United States Supreme Court has "repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Weinberger v. Romero-Barcelo, 456 U.S.C 305, 312 (1982). "In brief, the bases for injunctive relief are irreparable injury and inadequacy of legal remedies." Amoco Production Co. v. Village of Gambell, AK, 480 U.S. 531, 542 (1987) (citing Weinberger, 456 U.S. at 311–313). The Supreme Court later established a four-part standard which a plaintiff must meet to merit injunctive relief:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as

> monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). See Peters v. Aetna Inc., 2 F.4th 199, 238 (2021). Further, "[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." Id. See Weinberger, 456 U.S. at 320.

## IV.   ANALYSIS

### A.   Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions. Failure to exhaust may only be excused upon a showing of cause and prejudice."  McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634–35 (2d Cir. 2001), Little v. Hopkins, 638 F.2d 953, 953–54 (6th Cir. 1981)). Exhaustion as provided in § 1997e(a) is mandatory. regardless of the relief offered through administrative procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court.  Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741). "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' " Porter, 534 U.S. at 524.

Pursuant to McClung, failure to exhaust may only be excused upon a showing of

cause and prejudice. The Petitioner claims that over a period of twenty years he exhausted his administrative remedies at the Central Office. However, there is no such filing with the Central Office that concerns his SHU placement at Hazelton. Nevertheless, the Respondent argues that the records for the Bureau of Prisons demonstrate that the Petitioner had filed two administrative remedies related to his placement in the SHU at Hazelton, but each of those remedies ***were filed only at the institutional level*** prior to filing suit. ECF Nos. 66 at 8, 66-1 at 40. A review of the Respondent's exhibits shows that of his sixty administrative remedies, only thirteen are related to his BOP custody:

(1)     Remedy ID 317233-F1, filed at FCC Oakdale, on November 20, 2003, alleges that his sentence is illegal, and was rejected on November 20, 2003 [ECF No. 66-1 at 17];

(2)     Remedy ID 317469, filed at FCC Oakdale on November 24, 2003, alleges that he is being held illegally, and was denied on November 24, 2003 [Id. at 18];

(3)     Remedy ID 318716-R1, filed at FCC Oakdale on November 26, 2003, alleges that he is being held hostage, and was rejected on December 8, 2003 [Id.];

(4)     Remedy ID 317469-R1, filed at FCC Oakdale on December 22, 2003, alleges that he is being held illegally, and was rejected on January 2, 2004 [Id. at 19];

(5)     Remedy ID 329452-A1, filed at FCC Oakdale on March 23, 2004, alleges that he is being held illegally, and was rejected on March 31, 2004 [Id. at 21];

(6)     Remedy ID 328945-R1, filed at FCC Oakdale on March 24, 2004, alleges that he is being held illegally, and was rejected on March 26, 2004 [Id. at 22];

(7)     Remedy ID 328952-F1, filed at FCC Oakdale on March 26, 2004, alleges that he is being held illegally, and was denied on March 26, 2004 [Id. at 23];

(8)     Remedy ID 360704-A1, filed at FCC Oakdale on October 26, 2004, alleges that he is being held hostage, and was rejected on December 7, 2004 [Id.];

(9)     Remedy ID 361795-R1, filed at FCC Oakdale on January 18, 2005, alleges that he is being held illegally, and was denied on January 21, 2005 [Id. at 24];

(10)    Remedy ID 406037-A1, filed at Atwater USP on February 28, 2006, alleges that he is "S/O being in SHU," and was denied on March 9, 2006, on the ground "Sen Inf Ins" [Id. at 26];[12]

(11)    Remedy ID 558480-F1, filed on September 30, 2009, requests a return to the general population, and was closed on September 30, 2009 [Id. at 32];

(12)    Remedy ID 1154890-R1, filed at USP Hazelton on March 13, 2023, challenges his SHU placement, and was rejected on March 20, 2023, because it was filed in the improper regional office [Id. at 40]; and

(13)    Remedy ID 1154890-R2, filed at USP Hazelton on March 27, 2023,

---

[12] To the extent that the Petitioner appears to have exhausted this administrative remedy relating to his 2006 placement in the Special Housing Unit, it is irrelevant to the Petitioner's current claims asserted in 2023. Even if it were used as a basis for this action, the Petitioner's 2006 administrative remedy was filed at Atwater USP, more than seventeen years before the instant claims were asserted at Hazelton USP.

challenges his SHU placement, and was rejected on April 18, 2023, because it was filed in the improper regional office [Id.].

Consistent with the Respondent's assertions, only the final two administrative remedy filings concern the Petitioner's claims as to his current placement in the SHU at Hazelton.

As to the process for exhaustion, as the Respondent argues that "[d]espite being provided instructions, Petitioner failed to file directly with his current regional office." ECF No. 66 at 8. Moreover, the Petitioner failed to further exhaust through the Central Office. However, those attempts do not satisfy the requirement of exhaustion, mandated by Bureau of Prisons' Program Statement (BOP PS) 1330.18, or 28 C.F.R. § 542.10 et seq. The Petitioner submitted both of those administrative remedies to the improper regional office, did not receive a substantive disposition from the appropriate regional office, did not subsequently file an appeal to and receive a final disposition from the Central Office, before filing this action.

As recognized in Carmona, supra, which was cited by the Fourth Circuit in its opinion in McClung:

> [T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the federal agency review process. Following the administrative procedures could potentially obviate the need for judicial review, or at a minimum, develop the factual record at the agency level at a time when the disputed events are still relatively fresh in witnesses' minds. In this sense, it is the analogue of the exhaustion of state remedies requirement for a state prisoner seeking federal habeas review, and the results governing failure to take this path should be the same.
>
> Administrative autonomy is also served by requiring that a federal prisoner justify his failure to exhaust his intra-Bureau remedies. When, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this

failure to exhaust.

Carmona, 243 F.3d at 634 (internal citations omitted).

Although the Petitioner broadly claims he was denied access to the administrative remedy process, that claim is inconsistent with the fact that the Petitioner has filed sixty administrative remedies while in federal custody, including five administrative remedies while at Hazelton.[13] Moreover, the Petitioner concedes in his Rebuttal and Objection that "the biggest cause of not being able to properly file grievances" is his cellmate who reads "outgoing mail, grievances, legal documents, [and] incoming mail." ECF No. 85 at 15.

Despite the Petitioner's initiation of the administrative remedy process through the institutional level, he fails to demonstrate that he filed either a BP-10 at the appropriate Regional Office, or a BP-11 administrative remedy request with the Central Office. Further, he has not received a dispositive response to any request related to his SHU assignment at Hazelton, in compliance with the Bureau of Prisons' Program Statement (BOP PS) 1330.18 § 542.10 et seq. All of those steps are necessary to exhaust administrative remedies prior to filing his petition herein.

It is clear that the Petitioner has failed to exhaust all administrative remedies available to challenge to his SHU placement at Hazelton. Such a failure to exhaust may be excused for cause and prejudice, however, the Petitioner has not alleged or demonstrated either. The amended petition broadly alleges that BOP staff lose the

---

[13] The Petitioner has filed the following administrative remedies while at Hazelton: (1) remedy ID 1154889-R1, filed on March 13, 2023, and rejected on March 20, 2023, for being filed in the wrong Regional Office [ECF No. 66-1 at 39]; (2) remedy ID 1154890-R1, filed on March 13, 2023, and rejected on March 20, 2023, for being filed in the wrong Regional Office [Id. at 40]; (3) remedy ID 1154890-R2, filed on March 27, 2023, and rejected on April 18, 2023, for being filed in the wrong Regional Office [Id.]; (4) remedy ID 1158039-F1, filed on April 14, 2023, and denied on April 14, 2023 [Id. at 41]; and (5) remedy ID 1158040-F1, filed on April 14, 2023, and rejected on April 14, 2023 as being repetitive to remedy ID 1158039-F1 [Id.].

grievances, refuse to file them, or transfer him to another facility too quickly.[14] However, he does not give any specific examples of his broad claims. Moreover, he does not allege that the Petitioner was denied access to the forms necessary to file his administrative remedies, or that staff failed or refused to submit specific forms once prepared by the Petitioner, or any other basis by which he was deprived of the opportunity to submit administrative remedy forms. Further, the administrative remedy record establishes that the Petitioner has ample access to the administrative remedy process, having filed sixty total grievances during his incarceration, and five grievances during his incarceration at Hazelton. The filing of those five grievances while at Hazelton demonstrates that the Petitioner was not denied forms for filing an administrative remedy. Notwithstanding his access to those forms, the Petitioner failed to exhaust. Moreover, the Petitioner was instructed in at least three rejections, that he filed in the wrong Regional Office. However, he failed to complete the proper procedure required to exhaust, by filing in the proper Regional Office, then through the Central Office.

Accordingly, the undersigned finds that no cause or prejudice exists to excuse the Petitioner's failure to exhaust. The Respondent submitted with his motion to dismiss exhibits which demonstrate that the Petitioner filed a BP-9 administrative remedy form at the facility or institutional level, which is only the first step required to exhaust pursuant to 28 C.F.R. § 542.13-.15, and BOP Program Statement 1330.18 § 542.10 et seq. ECF No. 66-1. However, the submitted forms demonstrate that the Petitioner did not exhaust his remedies by receiving a dispositive response from the Central Office before filing this action.

---

[14] The Petitioner contends in his Rebuttal and Objection [ECF No. 85] and "Objections" [ECF No. 90] that staff fail to file administrative remedies, because they are corrupt.

Accordingly, were the Court to consider Petitioner's claim under § 2241, it is clear that this Court is without jurisdiction to consider the merits of his petition because the Petitioner failed to exhaust his administrative remedies prior to filing this action. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

### B. The Petitioner's Challenge to his Custody Classification or Placement is Not Cognizable Under § 2241[15]

Even if the Petitioner had exhausted his administrative remedies prior to filing the instant action, he is still not entitled to relief because the claim he raises—a challenge to his custody classification or placement—is not properly considered under § 2241.

The Petitioner seeks the writ of habeas corpus challenging his prison conditions, and asserts that he has been improperly placed in the SHU at Hazelton. ECF No. 57. Further, in his request for relief, he seeks transfer to a facility closer to his family in Wisconsin. Id. at 14. For relief, the Petitioner does not seek release from custody, to shorten his incarceration, or to restore any good time credit. Rather, the Petitioner seeks to have the Court order the Bureau of Prisons to remove him from the Special Housing Unit, and to transfer him to another facility. Id.

To the extent that the Petitioner contends that the BOP, acting through its administration or through Hazelton USP, failed to properly determine his facility placement, or custody classification, his petition fails because neither the fact nor the

---

[15] Although the petition should be dismissed due to Petitioner's failure to exhaust, the undersigned will address the Petitioner's claim as if exhaustion had occurred.

length of his confinement are contested. Because the Petitioner seeks relief that does not affect the fact or duration of his confinement, his claim is inappropriate for consideration under § 2241.[16] As stated by the Supreme Court:

> Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254,[17] and a complaint under . . . 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." An inmate's challenge to the circumstances of his confinement, however, may be brought under § 1983.[18]

Hill v. McDonough, 547 U.S. 573, 579 (2006) (internal citations omitted). The Supreme Court previously explained in a challenge by two prisoners that, "[b]ecause neither prisoner's claim would necessarily spell speedier release, neither lies at 'the core of habeas corpus' . . . [and] the prisoners' claims for *future* relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core." Wilkinson v. Dotson, 544 U.S. 74, 82 (2005) (internal citations omitted). In his amended petition, it is clear that the Petitioner does not attack, nor are his claims related in any way to, the execution of his sentence. He does not challenge the validity of his confinement or seek speedier release from confinement. Instead, he complains about his placement in the SHU at Hazelton, and the alleged

---

[16] Even if Petitioner had stated a claim based upon the fact or duration of his confinement, that claim would still be subject to dismissal for failure to exhaust his administrative remedies, as discussed in Section IV.A. above.

[17] Federal prisoners may file a petition under § 2241 to challenge the fact or duration of confinement.

[18] Actions filed under § 1983 are civil rights actions against state actors. In Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 399 (1971), the Supreme Court created a counterpart to §1983, so that in limited circumstances individuals may bring suit against a federal actor for violating a right guaranteed by the Constitution or federal law. Egbert v. Boule, 142 S.Ct. 1793 (2022).

denial of a due process hearing prior to that placement. Accordingly, it appears that the Petitioner has failed to assert a claim for which relief can be granted under 28 U.S.C. § 2241, and his petition must be dismissed.

Moreover, the Supreme Court has held that the Due Process protections do not apply to prison assignment or custody classification:

> [W]e cannot agree that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause. The Due Process Clause by its own force forbids the State from convicting any person of crime and depriving him of his liberty without complying fully with the requirements of the Clause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison, if, as is likely, the State has more than one correctional institution. The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

Meachum v. Fano, 427 U.S. 215, 224, 96 S. Ct. 2532, 2538, 49 L. Ed. 2d 451 (1976)

Further, in Rodriguez v. Ratledge, 715 F. App'x 261, 266 (4th Cir. 2017), the Fourth Circuit found a petitioner's challenge to his transfer to a higher security institution "was not a cognizable 2241 claim, because this petition challenges the conditions of his confinement, not its fact or duration."

Other Courts of Appeal have similarly held that prisoners have no constitutional right to placement in any particular institution or custody classification. Neal v. Shimoda,

131 F.3d 818, 828 (9th Cir.1997) ("[A] prisoner does not have a constitutional right to be housed at a particular institution, ..., [or] to receive a particular security classification....") (citing <u>Meachum v. Fano</u>, 427 U.S. 215, 224, 96 S.Ct. 2532, 2537 (1976), <u>Moody v. Daggett</u>, 429 U.S. 78, 87 n.9, (1976); <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation.") (Citing <u>Wilson v. Budney</u>, 976 F.2d 957 (5th Cir. 1992)).

In an unpublished per curiam opinion the Fourth Circuit affirmed that an inmate's classification is administrative and prison officials can change an inmate's security classification "for almost any reason or no reason at all."[19] <u>Brown v. Ratledge</u>, No. 7-16-CV-00303, 2017 WL 4404248, at *7 (W.D.Va. Sept. 29, 2017, <u>aff'd</u>, 709 F. Appx. 215 (4th Cir. 2018) (per curiam) (unpublished) (citations omitted).

Because the sole issue raised by Petitioner is his placement in the Special Housing Unit at Hazelton, which is not appropriate for disposition through a § 2241 proceeding, this case should be dismissed for failure to state a claim upon which relief may be granted. To the extent that Petitioner contests his custody classification, that

---

[19] The district court more fully explained that:

A prison inmate does not have a protectable liberty or property interest in his custodial classification" and does not have a constitutional right to be housed in a particular facility. *See Wolters v. Fed. Bureau of Prisons*, 352 Fed.Appx. 926, 928 (5th Cir. 2009) (citing *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). Classification of inmates is an administrative function, and prison officials can change an inmate's classification for almost any reason or no reason at all. *See Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989); *Wolters*, 352 Fed.Appx. at 928; *Mendoza v. Lynaugh*, 989 F.2d 191, 194 n. 4 (5th Cir. 1993). Therefore, the court concludes that Brown's allegations do not state a due process violation.

<u>Brown v. Ratledge</u>, 2017 WL 4404248, at *7.

subject is also inappropriate for disposition in a § 2241 proceeding because a challenge to custody classification contests the conditions of confinement, not the fact or duration of confinement. That subject is within the purview of the BOP, and is improperly considered for review in a § 2241 proceeding. Accordingly, Petitioner's claim is not appropriate in a § 2241 proceeding, even if this Court had subject matter jurisdiction.

Finally, to the extent that Petitioner alleges that the BOP improperly designated him to a facility more than 500 driving miles of his residence[20], the same is not cognizable in a habeas petition. The Fourth Circuit has held that a petitioner's "claim seeking to have the BOP reconsider where he is being housed is one that would not fall within the scope of habeas corpus." Wilborn v. Mansukhani, 795 F. App'x 157, 164 (4th Cir. 2019).

### C.   Petitioner's Claims Do Not Merit Either Preliminary or Permanent Injunctive Relief

A preliminary injunction or temporary restraining order ("TRO"), may be granted under the authority of Federal Rule of Civil Procedure 65. Rule 65(b) provides that:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

---

[20] Pursuant to 18 U.S.C.A. § 3621(b):

The Bureau of Prisons shall designate the place of the prisoner's imprisonment, and shall, subject to bed availability, the prisoner's security designation, the prisoner's programmatic needs, the prisoner's mental and medical health needs, any request made by the prisoner related to faith-based needs, recommendations of the sentencing court, and other security concerns of the Bureau of Prisons, place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence.

Fed. R. Civ. P. 65. The Supreme Court has long held that, "under federal law [TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty., 415 U.S. 423, 439 (1974). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held.

Although the Petitioner alleges that he has been denied the appropriate Due Process prior to his SHU placement [ECF No. 57], he does not meet the four-part Winter test for issuance of such a preliminary injunction. First, the Petitioner has not shown he is likely to succeed on the merits in regard to his claim. "To state a claim for relief in an action brought under § 1983, [Petitioners] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). See Thomas v. The Salvation Army Southern Territory, 841 F.3d 632, 637 (2016). In his motion for injunctive relief the Petitioner claims that he has been wrongfully placed in the SHU without appropriate due process. ECF No. 57. However, as discussed in Section IV.B. above, the Due Process Clause is not invoked for prisoners related to their custody classification or facility assignment. Accordingly, even if the Court were to consider the Petitioner's claims on the merits, he is not likely to succeed.

Further, the Respondent argues that the Petitioner has failed to exhaust his administrative remedies, and thus, this Court is without jurisdiction to consider his claims on the merits. Attached to the Respondent's Motion to Dismiss are exhibits, including: a declaration from Misty Shaw, a paralegal at the Bureau of Prisons Mid-Atlantic Regional Office [ECF No. 66-1 at 1–3], Public Information Inmate Data sheet [Id. at 5–9], and Administrative Remedy Generalized Retrieval sheet [Id. at 11–41]. The Administrative Remedy Generalized Retrieval history shows that while incarcerated, the Petitioner has filed two administrative remedies related to his placement in the SHU at Hazelton. However, both of those administrative remedies were filed only at the institutional level. The Petitioner failed to complete the necessary steps to appeal from the institution to the Regional Office, then appeal to the Central Office before filing this action. The administrative remedy documents provided by Respondent show that the Petitioner did not exhaust his administrative remedies prior to filing the instant action. Although the Respondent provided records that demonstrate that the Petitioner *pursued* administrative remedies related to his SHU placement, critically, those records show that the Petitioner did not *exhaust* those administrative remedies through a decision on the merits. Failure to exhaust his administrative remedies dooms both the petition for habeas corpus and the Petitioner's request for injunctive relief.

For all these reasons, as to any request for preliminary injunctive relief, the Petitioner is unable to meet the first prong of the Winter test, which requires him to prove that he is likely to prevail on the merits. Failure to exhaust administrative remedies alone will prevent the Petitioner from prevailing on the merits of his habeas corpus petition. Because the Petitioner fails to meet the first prong of the Winter test, the undersigned

need not consider the other three prongs of the test, and the Petitioner's motions for injunctive relief filed on November 20, 2023, and April 17, 2024, are not merited. Moreover, to the extent that the Petitioner's motion seeks to mandate action by the Respondent, the Petitioner has failed to demonstrate that he is entitled to extraordinary relief because he has failed to demonstrate that the exigencies of the situation demand such relief. The Petitioner is serving a life sentence and has repeatedly, including in this action, complained that he feels he is a target for prison gangs. It is unclear whether the Petitioner has been placed in the SHU for protective custody, but regardless of the reason for his placement, that decision falls squarely in the purview of the Bureau of Prisons. Accordingly, the Petitioner's Due Process rights are not invoked by any BOP determination on either custody classification, or prison assignment.

Moreover, even if the Court were to consider that the Petitioner exhausted his administrative remedies, he cannot meet the second prong of Winter, that he is likely to suffer irreparable harm in the absence of preliminary relief. The undersigned acknowledges that being wrongfully incarcerated constitutes irreparable harm. However, the Petitioner he is unable to demonstrate absent injunctive relief that he would be released at any time during 2024. Rather, the Petitioner is serving a life sentence and has no projected release date. It is apparent that the exigencies of the situation do not demand relief. Because the Petitioner cannot meet the second prong of Winter, the undersigned need not address the other prongs. For all the above reasons, the Petitioner cannot meet all four prongs of the Winter test, and thus is not entitled to injunctive relief.

It is clear that the Petitioner has failed to exhaust all administrative remedies available to his placement in the SHU at Hazelton, but even if he had, that he is unlikely

to succeed upon the merits of his claim regarding his custody classification and prison assignment. Therefore, the Petitioner's claim may not be considered under § 2241, and this Court is without jurisdiction to consider his petition. When subject-matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012–16 (1998); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999).

As to the Petitioner's request for a permanent injunction, he does not meet the four-part eBay test. Under that test, the Petitioner must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for his injury; (3) that, considering the balance of hardships between the Petitioner and Respondent, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

First, the Petitioner has not demonstrated that he has suffered an irreparable injury by his placement in the Hazelton Special Housing Unit. Moreover, the Petitioner has not even asserted that he suffered an irreparable injury. Rather he contends that he is dissatisfied with his placement, and that he has limited legal access, limited job assignments, various mental health claims, and deterioration of his physical health from his lack of physical activity. However, it has long been recognized that:

> [Prison c]onditions . . . may deprive inmates of the minimal civilized measure of life's necessities. . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981). To the extent that the Petitioner alleges he is depressed, anxious, and has lost some of his physical and mental health because of his incarceration, he has failed to allege an irreparable injury caused by his SHU assignment.

Second, the Petitioner cannot demonstrate that remedies available are inadequate to compensate him for his injury, because he does not allege any injury.

Third, the Petitioner does not demonstrate that considering the balance of hardships between the Petitioner and Respondent, that a remedy in equity is warranted. Again, the Petitioner's failure to allege any wrongdoing, or injury inflicted by his SHU placement, prevents him from proving that he faces any hardship as a result of that assignment. Because the Petitioner is unable to meet the first three prongs of the eBay test, the Court need not consider the fourth prong. Further, because the Petitioner is unable to meet all four parts of the eBay test for issuance of a permanent injunction, his motions filed on November 20, 2023, and April 17, 2024, are without merit, and his request for a permanent injunction should be denied.

## V.    RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Amended Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 57] be **DENIED** and that the § 2241 proceeding be **DISMISSED WITHOUT PREJUDICE** because the Petitioner failed to exhaust his administrative remedies prior to filing this petition under § 2241.

It is also **RECOMMENDED** that the Respondent's motion to dismiss [ECF No. 65] be **GRANTED.**

It is further **RECOMMENDED** that the Petitioner's motions for injunctive relief

[ECF Nos. 75, 104] be **DENIED**.

The Petitioner shall have **fourteen (14) days** from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record by electronic means.

**DATED:**  May 30, 2024

s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE